IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

DAVID KIRKPATRICK, on behalf of
himself and all others similarly
situated,

                Plaintiff,

v.

WELLS FARGO BANK, N.A. d/b/a           Civil Action No. 5:24-cv-00169
Wells Fargo Home Mortgage and
HSBC Bank USA, N.A.,

                Defendants.

MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL
CERTIFICATION OF SETTLEMENT CLASS
AND ENTRY OF SCHEDULING ORDER

## I.      INTRODUCTION

Plaintiff David Kirkpatrick ("Plaintiff"), by counsel and on behalf of the proposed

settlement class, hereby respectfully submits this Memorandum in Support of his Motion for

Preliminary Approval of Settlement and Entry of Scheduling Order. Plaintiff and Defendants

Wells Fargo Bank, N.A., d/b/a Wells Fargo Home Mortgage (Wells Fargo) and HSBC Bank USA,

N.A. (HSBC), (together "Defendants", and together with Plaintiff, the "Parties") reached this

settlement after significant productions of documents, a Notice of Rule 30(b)(6) Deposition of

Deposition of Wells Fargo was served, and after the parties conducted two arm's length mediation

sessions. The terms of the proposed settlement ("Settlement") are fair and will create a common

fund of $1,300,000.00 and pay class members approximately $400 per account after deduction of

attorney's fees and expenses, costs, and any service award. The relief compares favorably to the

potential damages award (including statutory damages) available to the class and is, in class counsel's view and in light of all the risks, an excellent outcome for class members. The proposed settlement agreement is subject to this Court's approval and is attached as **Exhibit A**.

Plaintiff respectfully requests that the Court enter an Order (1) preliminarily approving the Parties' proposed Settlement, embodied in the Settlement Agreement (the "Settlement Agreement") attached as Exhibit A; (2) provisionally certifying the proposed Settlement Class for settlement purposes only; (3) appointing Plaintiff as class representatives and Plaintiff's counsel as class counsel; (4) approving the form, manner, and content of class notice and the procedures for settlement class members to opt out or object; (5) approving Epiq Class Action & Claims Solutions as the settlement administrator,  and (6) establishing a schedule to complete the tasks necessary to effectuate the proposed Settlement. For the reasons set forth more particularly below, Plaintiff respectfully requests that the Court grant this Motion.

Defendants have agreed to the proposed order of preliminary approval attached to this motion, for settlement purposes only.

## II.    <u>PROCEDURAL BACKGROUND</u>

On or about February 29, 2024, Plaintiff filed a Class Action Complaint in the Circuit Court of Raleigh County, West Virginia at CC-41-C-78 (the "Action") against Wells Fargo and HSBC alleging violations of the West Virginia Consumer Credit Protection Act ("WVCCPA") arising out of the terms of Wells Fargo's COVID forbearance program.  Plaintiff asserted one claim under the WVCCPA on behalf of a class based on alleged representations made to West Virginia borrowers relating to the movement of payments to the end of the loan term as part of Wells Fargo's COVID forbearance program. Plaintiff asserted a second claim under the WVCCPA on an individual basis arising out of alleged issues during a subsequent loan modification process.

On or about May 6, 2024, Wells Fargo and HSBC filed Answers. (ECF Nos. 7 and 8). The Parties moved to extend the discovery period on September 13, 2024, which the Court granted on September 19, 2024. (ECF Nos. 24 and 25). The Parties entered into a Stipulated Protective Order (the "Protective Order"), which the Court entered on November 27, 2024.  (ECF No. 31).  The Protective Order dictates the Parties' production and use of documents, deposition testimony, and information designated "Confidential" by either Party, the destruction of such material upon the termination of this Action, and the obligations to redact and/or file under seal any documents, deposition testimony, or information designated as "Confidential."

The Parties diligently worked through discovery, including serving and responding to Requests for Production of Documents, Interrogatories, and Requests for Admission.  The Parties also completed significant productions of documents, and a Notice of Rule 30(b)(6) Deposition of Wells Fargo was served.  Wells Fargo produced more than 40,000 pages of documents. On January 24, 2025, the Parties moved to extend the discovery period a second time to allow for processing of the large productions and for the Parties to conduct mediation on March 19, 2025.  (ECF No. 39). The Court held an in-person status conference on February 4, 2025, where the Court suspended the scheduling order through mediation.  (ECF No. 42).

The Parties participated in two arm's length mediation sessions with mediator Stephen Dalesio, Esq. in Pittsburgh, PA on March 19, 2025 and April 9, 2025. The Parties agreed to a settlement in principle at the second mediation and executed a Settlement Term Sheet on April 9, 2024. Based upon their investigation and evaluation of the facts and law relating to the matters in the pleadings, mediation with Stephen Dalesio, Esq., and well informed settlement discussions, the Parties agreed to settle this Action pursuant to the provisions of this Agreement.

The parties filed a Notice of Settlement (ECF No. 47) and this Court stayed this case pending Plaintiff's Motion for Preliminary Approval of Class Action Settlement. (ECF No. 48).

Defendants have denied and continue to deny each and every allegation of liability, wrongdoing, and damages, as they have factual and legal defenses to all claims and class allegations asserted in the Action. Defendants have always maintained, and continue to maintain, that they have acted in accordance with governing law. Plaintiff likewise maintains the strength of his positions. This Agreement shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of the Parties with respect to any claim by any Class Member, any fault, liability, wrongdoing or damage, or any defenses Defendants asserted. The Parties nonetheless have concluded that continuing the Action would be protracted, expensive, and disruptive to their business and/or lives. They therefore have decided that it is desirable to fully and finally settle the Action on the terms and conditions set forth herein to avoid the further expense, inconvenience, and distraction of the Action and to dispel any related uncertainty.

The Settlement Agreement contemplates Wells Fargo establishing a settlement fund totaling $1,300,000.00. This fund will be used to pay settlement payments to settlement class members, which payments will be allocated on a per-account basis. After payment of Plaintiff's attorney's fees and expenses, costs, administrative costs, and any incentive award to Plaintiff, this settlement fund represents approximately $400 per loan account. This is a significant recovery relative to the maximum potential statutory recovery per class member, which is $1000 per WVCCPA violation adjusted for inflation from September 2015. The settlement fund will also be used to pay attorneys' fees and expenses, costs, any administrative costs, and service award, subject to Court approval.

Defendants have denied and continue to deny any and all allegations and claims asserted against them in the Complaint and deny any and all wrongdoing.

### III.    PROPOSED SETTLEMENT

#### A.    Terms of the Settlement Agreement

The proposed Settlement requires Wells Fargo to pay a Settlement Fund of $1,300,000.00. This amount is a lump sum payment inclusive of: (1) all Settlement Payments; (2) Class Counsel's Fees and Expenses and court costs; (3) costs of Class Notice and Administrative Costs; and (4) any Class Representative Incentive Award. The parties separately resolved Plaintiff's individual claims. However, these claims and damages were unique to Plaintiff, and the individual claims were negotiated separately from the class claims and payment for settlement of the individual claims and payment for settlement of the individual claims is separate from and does not come out of the Settlement Fund.[1]

Plaintiff's counsel will move the Court for an award of Attorney's Fees and Expenses during the pendency of the Class Notice period. Wells Fargo takes no position on Class Counsel moving the Court for this award. Plaintiff will also request an incentive award of not more than $15,000 for Plaintiff's service to the class, subject to the Court's approval. Any award of Attorneys' Fees and Expenses shall be paid out of the Settlement Fund.

The Parties have selected Epiq Class Action & Claims Solutions as the Settlement Administrator, which will establish a settlement website, distribute notice, process claims, field calls and correspondence from Settlement Class Members, and disburse amounts from the Settlement Fund. Epiq has extensive experience in administering class action settlements including

---

[1] To the extent the Court would like to separately review the individual Settlement Agreement, the Parties will provide the document to the Court for *in camera* review.

direct mail services, database management, and settlement fund distributions services. The Settlement Administrator's fees and costs will be paid from the Settlement Fund.

**B.**    **Notice and Administration Provisions**

"In the context of a class action, the due process requirements of the Fifth Amendment require '[r]easonable notice combined with an opportunity to be heard and withdraw from the class.'" *Groves v. Roy G. Hildreth & Son, Inc.*, No. 2:08-cv-820, 2011 WL 4382708 *3 (S.D.W. Va. Sept. 20, 2011) (quoting *In re Serzone Prods. Liability Litig.*, 231 F.R.D. 221, 231 (S.D.W. Va. 2005)); *see also Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011). Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *see also Robinson v. 3rd Group Properties, LLC*, No. 1:18-cv-00646, 2020 WL 4558978, at *3 (M.D. N.C. Jan. 29, 2020); *Helmick v. Columbia Gas Transmission*, No. 2:07-cv-743, 2010 U.S. WL 2671506, at *8 (S.D.W. Va. July 1, 2010); *Muhammad v. Nat'l City Mortgage, Inc.*, No. 2:07-cv-423, 2008 WL 5377783, at *3 (S.D.W. Va. Dec. 19, 2008). The notice must "inform potential class members of the nature of the action, that class members may make an appearance through counsel, that class members may exclude themselves from the settlement, and that the class judgment will have a binding effect on class members who are not excluded." *Groves*, 2011 WL 4382708, at *3; *Helmick*, 2010 WL 2671506, at *8. Silence on the part of potential class members receiving the notice equates to "tacit consent to the court's jurisdiction." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 231; *see also Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 306 (3d Cir. 1998).

The type of notice to which a member of a class is entitled depends upon the information available to the parties about that person, and the possible methods of identification. *See In re*

*Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977) (*citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). In determining the reasonableness of the effort required, the court must look to the "anticipated results, costs, and amount involved." *In re Nissan*, 552 F.2d at 1099. "[D]ue process is satisfied 'where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to opt out.'" *Domonoske*, 790 F. Supp. 2d at 472 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

Defendants have queried their records to determine the name, last-known address, and pertinent account information for settlement class members. After the Settlement Administrator agrees to be bound by the protective order (ECF 31), Wells Fargo will provide the Settlement Administrator with the names and last known addresses of Class Members on the Notice List. Prior to mailing, the Settlement Administrator will attempt to update the last known addresses of the Class Members set forth on the Notice List through the National Change of Address system or similar database. With such detailed information, the first-class mailed notice proposed in the Settlement Agreement will provide the best notice to class members. Notices returned with forwarding addresses shall be promptly re-mailed. These procedures are designed to reach the maximum number of Settlement Class Members at a reasonable expense.

The Parties' proposed Notice of Class Settlement, attached as Exhibit A to the Settlement Agreement, provides a full description of the nature of the action, proposed settlement, and requested attorneys' fees. *See Domonoske*, 790 F. Supp. 2d at 472. The Notice describes in plain English the terms and operation of the settlement, the considerations that caused Class Counsel to conclude that the Settlement is fair and adequate, the procedure for objecting to and opting out of the settlement, and the date of the fairness hearing.

## IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Settlement of class actions must be approved by the Court. Fed. R. Civ. P. 23(e); *Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-cv-04107, 2022 WL 327739, at *1 (S.D. W. Va. Feb. 3, 2022), citing *Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Domonoske*, 790 F. Supp. 2d at 472; *Muhammad*, 2008 WL 5377783, at *3.   "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement."  *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *see also Groves*, 2011 WL 4382708, at *4.

Such approval typically involves a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004); *Grice v. PNC Mortgage Corp. of Am.*, No. 97-3804, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing Manual's two-step process); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1992). In the first stage, the parties submit the proposed settlement to the Court for preliminary approval. In the second stage, following preliminary approval, the Class is notified and a fairness hearing scheduled at which the Court will determine whether to approve the settlement. *See Bicking v. Mitchell Rubenstein & Assocs.*, No. 3:11-cv-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011) ("Prior to granting final approval, the court must direct reasonable notice to all potentially affected class members, allow time for objection, and provide a 'fairness hearing.'").

Upon submission to the court of the parties' proposed settlement, a court will undertake a preliminary evaluation to determine whether the proposed settlement "appears to fall within the range of possible approval." *Manual for Complex Litigation* § 30.41, at 265 (3d ed. 2000); *see also All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants*, 203 F.R.D. 403, 416 (S.D. Ind. 2001). "Whether to preliminarily approve a proposed class action settlement lies within the

8

sound discretion of the district court." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 482 (D.D.C. 2019). "[T]here is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). The bar for obtaining preliminary approval is low. *All Bromine Antitrust Plaintiffs*, 203 F.R.D. at 416.

In determining whether a settlement meets the requirements of Rule 23, the Fourth Circuit has adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *Groves*, 2011 WL 4382708, at *4. Pursuant to Rule 23(e)(2), the district court may approve the settlement "only after a hearing and only on finding that it is fair, reasonable and adequate after considering whether:

    **(A)** the class representatives and class counsel have adequately represented the class;

    **(B)** the proposal was negotiated at arm's length;

    **(C)** the relief provided for the class is adequate, taking into account:

        **(i)** the costs, risks, and delay of trial and appeal;

        **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

        **(iv)** any agreement required to be identified under Rule 23(e)(3); and

    **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These amendments to Rule 23 are consistent with longstanding Fourth Circuit caselaw and law in this district recognizing that a class settlement is fair when it is "reached as a result of good faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Bicking*, 2011 WL 5325674, at *4. The Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations,

has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Samuel v. Equicredit Corp.*, No. 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. 2002); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25071, at *29-30; *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Muhammad*, 2008 WL 5377783, at *4.

In assessing the fairness of a proposed settlement, the Court must look to the following factors: (1) posture of the case at the time the settlement is proposed; (2) extent of discovery that has been conducted; (3) circumstances surrounding the negotiations; and (4) experience of counsel in the relevant area of class action litigation. *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practice,* 952 F.3d 471, 484 (4th Cir. 2020); *see also Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *4; *Loudermilk Servs., Inc.*, No. 3:04-cv-966, 2009 WL 728518, at *8 (S.D.W. Va. Mar. 18, 2009). In determining the adequacy of the proposed settlement, the Court must consider: (1) relative strength of Plaintiff's case on the merits; (2) existence of any difficulties of proof or strong defenses Plaintiff is likely to encounter if the case proceeds to trial; (3) anticipated duration and expense of additional litigation; (4) solvency of defendant and likelihood of recovery of a litigated judgment; and (5) degree of opposition to the settlement. *Id.*; *see also Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *5; *Loudermilk Servs., Inc.*, 2009 WL 72818, at *3.

Consideration of the applicable factors reveals that the proposed Settlement Agreement should be preliminarily approved.  The Settlement was indeed the product of serious, informed,

arm's-length, and non-collusive negotiations.  Before settling this matter, the Parties participated in formal discovery as well as two formal arm's length mediations among counsel, all of whom are experienced in consumer class actions. By the time the parties reached a settlement, Plaintiff's Counsel and Defendants' Counsel, who are both experienced with complex class action claims such as these, had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement.  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986).

The Settlement has no obvious deficiencies and does not grant preferential treatment to the class representatives or any segments of the class.  Each Settlement Class Member will receive a significant cash award. The intrinsic value of the net settlement payment to class members is readily apparent when one considers the risks inherent in continued and protracted litigation, the costs and uncertainty of litigation, and the expense and delay that accompany the appeal process.

The Settlement is particularly valuable to absent class members who, but for the Settlement, likely would be unaware of the existence of their legal claims.  Even if they were aware, given the relatively small amounts of money involved, absent class members and attorneys who may represent them would have little financial incentive to prosecute individual actions. The alternative to bringing this case as a class action is bringing hundreds of individual claims against Defendants.  Realistically, the alternative to a class action under the present circumstances is no action at all.

"[C]ompromise and settlement are favored by the law."  *Groves*, 2011 WL 4382708, at *4. The proposed settlement serves the overriding public interest in settling litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  The complexity, expense, and duration of

class action litigation are factors that mitigate in favor of preliminary approval of a settlement. *In re Corp. Litig.*, 264 F.3d 201, 231, 233 (3d Cir. 2001); *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead to rationally and reasonably forgo the expense and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account.

Finally, the "opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration." *Muhammad*, 2008 WL 4382708, at *4. "'When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.'" *Id.* at *4 (quoting *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000)). In the present case, proposed class counsel, who recommends the settlement, is skilled and experienced in consumer class actions. (Ex. B – Decl. of Jonathan Marshall ¶¶ 1-9). *See also Six v. Loancare, LLC*, No. Civ. A. 5:21-cv-00451, 2022 WL 16747291, at *4 (S.D. W Va. Nov. 7, 2022) (recognizing these class counsel in WVCCPA case to be "skilled and experienced in consumer class actions").

## V.  CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

The Parties' proposed settlement contemplates the certification of a settlement class defined as follows:

> All  (1) borrowers on Wells Fargo home mortgage accounts, (2) with a West Virginia mailing or property address as set forth in Wells Fargo's system of record, and (3) that participated in COVID forbearance; and (4) received a letter between March and December of 2020 discussing what would happen with missed COVID forbearance payments at the end of the loan period.

The settlement class consists of approximately 2,010 accounts as identified by Wells Fargo.

12

The proposed settlement class must meet the requirements for certification under Rule 23. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 236-37. The Parties have agreed to the certification of the class for settlement purposes only.

A.    **The Class Satisfies the Numerosity, Commonality, Typicality and Adequacy Elements of Rule 23(a)**

1. **Numerosity**

Rule 23(a)(1) requires that the class be of sufficient size that joinder of all members is "impracticable." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237; *Bicking*, 2011 WL 5325674, at *2. "In determining whether joinder is impracticable, a court should analyze the factual circumstances of the case rather than relying on numbers alone." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237; *see also Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir.1984); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648 (4th Cir. 1967). Factors to consider are "the estimated size of the class, the geographic diversity of class members, the difficulty of identifying class members, and the negative impact of judicial economy if individual suits were required." *Christman v. Am. Cyanamid Co.*, 92 F.R.D. 441, 451 (N.D.W. Va. 1981); *see also McGlothlin v. Connors*, 142 F.R.D. 626, 632 (W.D. Va. 1992).

In the present case, the Class consists of approximately 2010 accounts. Individual joinder of all of these persons is impracticable, especially considering the relatively small recovery sought and the geographic dispersal of class members across the state of West Virginia. Courts have certified class actions with far fewer members. *See, e.g.*, *Cypress*, 375 F.2d at 653 (eighteen class members).

### 2.  Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class."  *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237; *see also Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).  Either common questions of law or fact can establish commonality.  *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 161 (S.D.W. Va. 1996).  Factual differences among the class members' cases will not preclude certification if the class members share the same legal theory. *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998); *see also Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984); *Christman*, 92 F.R.D. at 452 n.28. The commonality requirement is subsumed under the more stringent predominance requirement of Rule 23(b).  *Lienhart*, 255 F.3d at 147 n.4; *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237.

This action implicates the central and overriding common question of whether Defendants' collection activities, specifically sending the subject letters regarding the treatment of missed payments in relation to a Covid related forbearance , violated West Virginia law. This question is common to all putative Settlement Class Members, as all have been subject to these collection activities. Accordingly, commonality is satisfied.

### 3.  Typicality

To establish typicality under Rule 23(a)(3), the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 238.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims."  *Black*, 173 F.R.D. at 162.  For purposes of typicality, there is a "'sufficient nexus . . . if the claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based

on the same legal theory.'" *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 238 (quoting *In re Trazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004)). Thus, the typicality rule assures that the class representatives' interests are "aligned" with those of the class. *Kennedy v. Sullivan*, 138 F.R.D. 484, 488 (N.D.W. Va. 1991).

Plaintiff's claims are clearly aligned with those of the putative Settlement Class Members. The facts supporting Plaintiff's claims are straightforward and typical of, if not identical to, the claims of the Settlement Class Members. Like all other Settlement Class Members, Plaintiff participated in COVID forbearance and was sent the letters at issue. As such, the proposed class satisfies the Rule 23(a)(3) typicality requirement.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 238. The representative must show that there are no conflicts of interest between his interests and those of the class he seeks to represent and that he has the willingness and ability to play an active role in the litigation and vigorously represent the class, while protecting the interests of the absentee class members. *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-30 (5th Cir. 2005); *see also Rhone-Poulenc*, 173 F.R.D at 162.

Plaintiff has no interests that are antagonistic to or conflict in any way with the interests of the proposed Settlement Class as a whole. Plaintiff shares an interest with the other Settlement Class Members in opposing Defendants' alleged collection practices and has willingly stepped forward to pursue his claims on a class-wide basis. Plaintiff has and will thus fairly and adequately protect the interests of the Settlement Class.

**B.    The Proposed Class Satisfies Rule 23(b)(3) Requirements of Predominance and Superiority**

In order for Plaintiffs to satisfy Rule 23(b), the Court must find that (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 239-40.

**1.    Common Questions of Law or Fact Predominate**

Rule 23(b)(3) requires that the questions of law or fact common to all class members predominate over questions pertaining to individual members. *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 239. Common questions predominate if class-wide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. "The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart*, 255 F.3d at 142 (quoting *Amchem Prod., Inc.*, 521 U.S. at 623); *Gariety*, 368 F.3d at 362. When certifying a class for settlement purposes only, manageability problems that would arise if the class were litigated, and that would prevent certification of a litigation class, need not be considered. *See Newberg on Class Actions* s. 13:36, p. 438 (4th ed. 2002) (stating that "for a settlement class there are fewer procedural barriers for certification . . . . Where class counsel must still prove there are common questions of law or fact, manageability concerns should not prevent a settlement class from being certified."); *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (U.S. 1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present

intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

The common question outlined above is broad and applies to all class members, and is readily capable of determination on a class-wide basis. Further, Defendant Wells Fargo has identified Settlement Class Members using its internal records.

**2.    The Class Action is the Superior Method to Adjudicate Plaintiffs' Claims**

Rule 23(b)(3) also requires the Court to find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Lienhart*, 255 F.3d at 147; *Bicking*, 2011 WL 5325674, at *3. Factors to be considered by the Court include: (1) class members' interests in individually controlling the prosecution or defense of separate actions; (2) extent and nature of any litigation concerning the controversy already begun by or against class members; (3) desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) likely difficulties in managing a class action. Fed. R. Civ. P. 23(b). Because this lawsuit concerns a settlement class, there is no concern with manageability of the case related to individualized affirmative defenses asserted by Defendant in opposition to certification. *Amchem Prods., Inc.*, 521 U.S. at 620.

In the present case, as stated above, Settlement Class Members have little interest in prosecuting individual actions. As such, there is no better method available for the adjudication of the claims which might be brought by each individual class member. The alternative to bringing this case as a class action is bringing hundreds of cases. The relatively small recovery sought makes it highly unlikely that settlement class members would pursue their claims on an individual basis. Accordingly, it is desirable to concentrate the litigation of these claims in this Court. *See Amchem Prods., Inc.*, 521 U.S. at 617 (observing that Rule 23(b) allows "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court

17

at all."); *Bicking*, 2011 WL 5325674, at *4 (same). Further, "[s]ettling this case as a class action will achieve economies for both the litigants and the court" through a significant reduction in the "overall cost of complex litigation, allowing plaintiffs' attorneys to pool their resources and requiring defendants to litigate all potential claims at once, thereby leveling the playing field between the two sides." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 240; *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 842 (E.D.N.Y. 1984). Therefore, there is no other superior method of adjudicating the controversy because class settlement provides an efficient and appropriate resolution of the controversy. Plaintiff has thus met the requirements of Rule 23(b)(3) for settlement purposes.

## VI.    PROPOSED CLASS COUNSEL ARE QUALIFIED TO REPRESENT THE CLASS

Rule 23(g) requires that the Court appoint class counsel upon certification of the class. Factors for the Court to consider include: the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; and the resources counsel will commit to representation of the class. Fed. R. Civ. P. 23(g)(1)(C)(i).

Proposed class counsel, Bailey & Glasser LLP and Katz Kantor Stonestreet & Buckner, PLLC, are qualified and able to represent the class. Proposed class counsel have submitted a declaration outlining their wide-ranging experience litigating consumer protection, class action, and other complex cases. (Ex. B – Decl. of Jonathan Marshall). As stated above, Plaintiff's counsel performed substantial work in investigating, prosecuting and negotiating settlement of the case, and are qualified to serve as class counsel. *See Muhammad*, 2008 WL 537783, at *3 (recognizing skill and experience of Plaintiff's counsel); *Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-cv-04107, 2022 WL 327739, at *3 (S.D. W. Va. Feb. 3, 2022) (same).

## VII.    PROPOSED SCHEDULE TO COMPLETE SETTLEMENT

The Court's calendar permitting, the parties propose the following schedule to complete

the tasks necessary to effectuate the proposed settlement:

> Class Notice Mailed by: Twenty-one (21) days after entry of the Court's Order granting preliminary approval of the Settlement.
>
> Objection Deadline:  Thirty (30) days after the Notice Mailing Date and not later than thirty (30) days prior to the Final Approval Hearing.
>
> Opt-Out Deadline: Thirty (30) days after the Notice Mailing Date and not later than thirty (30) days prior to the Final Approval Hearing.
>
> Final Approval Submissions:  No later than 14 days prior to the Final Approval Hearing.
>
> Final Approval Hearing: At the earliest convenient date of the court on or after _____, 2026, which will ensure the Final Approval Hearing is no earlier than 90 days after the notices are sent to the class and notices are mailed pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715. This date is at least 111 days after this Court's entry of preliminary approval of settlement.

## VIII.    CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant this Motion

and enter the submitted Proposed Order, (1) preliminarily approving the Parties' proposed

Settlement Agreement attached as Exhibit A; (2) provisionally certifying the proposed Settlement

Class for settlement purposes only; (3) appointing Plaintiff as Class Representative and Plaintiff's

counsel as Class Counsel; (4) approving the form, manner, and content of class notice and the

procedures for Settlement Class members to opt out or object; (5) approving Epiq Class Action &

Claims Solutions as the Settlement Administrator, and (6) establishing a schedule to complete the

tasks necessary to effectuate the proposed Settlement.

Respectfully Submitted,

*/s/ Jonathan R. Marshall*

Jonathan R. Marshall (WVSB #10580)
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
Email: jmarshall@baileyglasser.com

Jason E. Causey
**KATZ KANTOR STONESTREET & BUCKNER, PLLC**
206 South Walker Street
Princeton, WV 24740
Email:  jcausey@kksblaw.com

*Counsel for Plaintiff and Proposed Class Members*

1.    IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**DAVID KIRKPATRICK, on behalf of**
**himself and all others similarly**
**situated,**

**Plaintiff,**

**v.**

**WELLS FARGO BANK, N.A. d/b/a**                    **Civil Action No. 5:24-cv-00169**
**Wells Fargo Home Mortgage and**
**HSBC Bank USA, N.A.,**

**Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of October, 2025, a true and correct copy of the

foregoing *Memorandum in Support of Unopposed Motion for Preliminary Approval of*

*Settlement, Conditional Certification of Settlement Class and Entry of Scheduling Order* was

electronically filed and served through the Court's CM/ECF system to all counsel of record.

/s/ Jonathan R. Marshall
Jonathan R. Marshall (WVSB #10580)